Filed 9/17/14  In re Alyssa A. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ALYSSA A., a Minor. | |
| DIANA A., | D065357 |
| Petitioner and Respondent, | |
| v. | (Super. Ct. No. A59178) |
| ALFRED A., | |
| Objector and Appellant, | |
| B. D., | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Reversed and remanded with directions.

Sahyeh S. Riopelle, under appointment by the Court of Appeal, for Objector and Appellant.

Carl Fabian, under appointment by the Court of Appeal, for Minor.

The Law Office of Richard L. Knight and Richard L. Knight for Petitioner and Respondent, Diana A. and Respondent B. D.

Alfred A., the biological father of Alyssa A. appeals an order under Family Code[1] section 7822 granting the petition filed by Alyssa's mother, Diana A., to free Alyssa from Alfred's custody and control on the ground of abandonment. Alfred contends that (1) automatic remand is required because the parties and the court proceeded under the wrong statutory provision; (2) he was denied his right to effective assistance of counsel because his trial counsel did not object to the use of the wrong statutory provision; (3) there was insufficient evidence to support a finding of abandonment; and (4) remand is necessary for compliance with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) because the mother did not properly investigate Alyssa's native American heritage or provide adequate notice to the tribe in question. All of the parties to this appeal note that the court's order granting the petition erroneously identifies B. D., rather than Diana, as the petitioner. Respondents ask that we direct the trial court to correct the order.

We conclude that the court committed reversible error by proceeding under subdivision (a)(2) of section 7822 rather than subdivision (a)(3). Accordingly we reverse the appealed order and remand the case with directions to hold a hearing to determine whether Alyssa should be freed from Alfred's custody and control under section 7822,

---

[1]     All further statutory references are to the Family Code unless otherwise specified.

2

subdivision (a)(3), and to identify Diana as the petitioner in the order that the court enters after that hearing.

FACTUAL AND PROCEDURAL BACKGROUND

Alfred and Diana were married in August 1998 and Alyssa was born in July 2001. Alfred incurred two convictions for driving under the influence of alcohol (DUI) before he met Diana, and received his third DUI conviction in April 1998. In 2003, Alfred and Diana separated and Diana filed for dissolution of their marriage. Alfred was granted supervised visitation with Alyssa and was ordered to pay child support. Alyssa's paternal grandfather (Alfred's father) supervised Alfred's visitation.

In March 2004, Alfred was again convicted of DUI and was sentenced to state prison for a term of 18 to 20 months. The marriage dissolution proceedings were finalized in July 2004. Diana was granted physical custody of Alyssa and Alfred was granted supervised visitation and was ordered to pay child support. The parents were granted joint legal custody. After Alfred was released from prison in late 2005, he began having regular supervised visits with Alyssa, and his child support obligation continued.

Alfred suffered another DUI conviction in 2008 and was sentenced to state prison. He was released sometime in 2009 and resumed supervised visitation with Alyssa. According to Diana, Alfred made his last child support payment of $125 in 2009. In his

3

testimony at the trial on Diana's petition, Alfred indicated that he made his last child support payment in October 2011.[2]

Alfred was again convicted of DUI in August 2011and served approximately 20 months in prison. His last visit with Alyssa was in October 2011, shortly before he was incarcerated. Alfred told the social worker that during his three periods of incarceration after Alyssa was born, he maintained contact with Alyssa through regular telephone calls and letters that he sent to the paternal grandfather's home.

Alyssa told Diana that Alfred had been drinking during her visits with him, and that he drove erratically while she was in the car. She told a social worker assigned to this case that she was sometimes afraid to be in the car when Alfred was driving. Alyssa reported that when she spent her ninth birthday with Alfred in July 2010, he drank alcohol and passed out, so they celebrated the following day with a cake. She said that she did not want to see Alfred after that, but she continued to visit with him at her paternal grandfather's house because she loved her grandfather and did not want to hurt his feelings. After Alfred was incarcerated in 2011, Alyssa had minimal contact with him. She spoke with him on the telephone, but only when he called her grandfather's house during her visits. She tried to avoid his calls. Her last telephone conversation with Alfred occurred in early 2012. After that call, she stopped visiting her grandfather and did not receive any more calls from Alfred.

---

[2]    Alfred was asked on direct examination, "So you paid no support while you were in custody from October 2011 to June of 2013, because you were in custody and did not have funds available?"  Alfred answered, "That's correct."

4

Diana and B. started dating in 2004 and began living together in 2008. Alyssa told the social worker, and testified in court, that she wanted B. to adopt her. She referred to B. as her "real dad," and said that he helped her with her homework, sports, and everyday life. In court she testified that she wanted to be adopted "because [B. has] been there for me . . . my entire life. He's done all the stuff I needed to support me. He goes to school functions and softball and fundraisers. And he's helped me through it all."

When Alfred was released from prison in June 2013, he contacted Diana to schedule visitation with Alyssa. Diana denied him visitation and would not allow him to speak to Alyssa, and Alyssa did not want to have any contact with him. Alfred filed a motion for visitation in family court on June 24, 2013. On July 10, 2013, Diana filed the instant petition for freedom from parental custody and control under section 7822.[3] The court put Alfred's motion for visitation on hold pending the outcome of Diana's petition.

The court held a trial on Diana's petition on January 24, 2014. The court admitted the social worker's report and heard testimony from Diana, the social worker, B., Alfred, and Alyssa. The court granted the petition and declared Alyssa free from Alfred's custody and control. The court found by clear and convincing evidence that Alfred abandoned Alyssa within the meaning of section 7822 and that it was in Alyssa's best interests "to be freed." The court specifically found that Alfred had left Alyssa "in the care and custody of a non-custodial [*sic*] parent for a period of six months without any

---

[3] Diana and B. filed an independent adoption request on July 5, 2013.

provision for the [child's] support and without communication from [Alfred], with the intent . . . on the part of [Alfred] to abandon the child."[4]

## DISCUSSION

### I. *Application of the Wrong Statutory Provision*

From the beginning of this case through the trial on the petition, the parties and the court erroneously proceeded under section 7822, subdivision (a)(2), which applies when a parent leaves a child in the care and custody of a *nonparent*. Diana's counsel erroneously filed her petition under section 7822, subdivision (a)(2), which provides that a proceeding to declare a child free from the custody and control of a parent may be brought when "[t]he child has been left by both parents or the sole parent in the care and custody of another person for a period of *six months* without any provision for the child's support, or without communication from the parent or parents, with the intent on the part of the parent or parents to abandon the child." (Italics added.) Diana should have filed her petition under section 7822, subdivision (a)(3), which applies when "[o]ne parent has left the child in the care and custody of the other parent for a period of *one year* without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child."[5] (Italics added.)

---

[4]    We assume that the court's reference to Diana as a "non-custodial" parent was inadvertent, since it is undisputed that Alyssa has been in Diana's custody her entire life.

[5]    Diana's counsel filed a form petition on which she checked the box setting forth the allegations of section 7822, subdivision (a)(2), rather than the next box, which sets forth the allegations of subdivision (a)(3).

Diana's trial counsel stated in closing argument, "So the evidence is pretty clear that even for a longer period of time than *the requisite six months*, that there was a lack of support . . . ."  (Italics added.)  Alyssa's counsel argued, "On the technical ground, there's been way over *six months* where he hasn't paid support.  And I think there's been way over *six months* that he hasn't maintained a parental relationship."  (Italics added.)

In its oral ruling, the court stated:  "I find by clear and convincing evidence that Alfred . . . did abandon the minor in this case, Alyssa . . . , within the meaning of . . . section 7822.  The child had been left in the care and custody of [Diana] for a period of *six months* without any provision for [her] support and without communication from [Alfred], with the intent . . . on the part of [Alfred] to abandon the child.  I think all parties have sufficiently litigated those issues.  But as [Diana's counsel and Alyssa's counsel] point out, there are clear periods of time here, *six months* at the very least, within the testimony, that indicated there was no contact between Alyssa and Alfred . . . .  And any contact, even within that scope, if there should be any facts that were relevant to *six month* time frames, was token contact, at best."  (Italics added.) The court further found:  "There were certainly *six month* periods at a time since 2009 that [Alfred] had the opportunity to [but did not] provide financial support for this child."  (Italics added.) Thus, the court terminated Alfred's parental rights based on a finding that he left Alyssa with Diana with no provision for Alyssa's support and with the intent to abandon her for a period of six months, rather than the statutorily required finding of a period of one year.

7

In this appeal, the parties agree that they and the court proceeded under the wrong statutory provision. However, Diana, B. and Alyssa[6] argue that the termination of Alfred's parental rights under the wrong provision is not reversible error. Specifically, they contend that the court's application of the six-month time period under subdivision (a)(2) of section 7822 is a harmless error because the outcome would have been the same if the court had applied the one-year time period under subdivision (a)(3). Alyssa argues that Alfred is required to show that he was prejudiced by the court's application of the wrong statutory provision, because the error is not a structural error subject to a reversible per se standard. Alyssa additionally argues that we may "properly imply the findings of a 12-month failure to pay support[.]" Diana and B. argue that Alfred forfeited this claim of error by not objecting in the trial court to the court's application of the wrong statutory provision.

We conclude that Alfred has not forfeited appellate review of whether the court erred in applying the wrong subdivision of section 7822 in ruling on Diana's petition. Because the issue is purely a question of law on undisputed facts, we exercise our discretion to excuse Alfred's failure to raise it in the trial court.[7] (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709;(*In re V.F.* (2007) 157 Cal.App.4th 962, 968.)

---

[6] Diana and B. filed a respondents' brief, and counsel appointed for Alyssa filed a separate respondent's brief on her behalf.

[7] Alyssa agrees with Alfred that there is no forfeiture because this court has the discretion to address his claim of error as an issue of pure law. Alyssa asserts that "[b]ecause [A]lfred's claim is intertwined with the issue of the sufficiency of the

Although we agree with Alyssa that the court's application of the wrong statutory provision in terminating Alfred's parental rights is not a structural error, we conclude that when a parent petitions to free a child from the custody and control of the other parent, the court must proceed under section 7822, subdivision (a)(3)—i.e., the court must make an *express finding* as to whether the non-petitioning parent "left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) Accordingly, we decline respondents' invitation to engage in harmless error analysis. If we were to conclude that the trial court's making a finding of abandonment for a period of six months under the wrong statutory provision constitutes harmless error because the record supports a finding of abandonment under the correct provision, we would effectively be making our own express finding on appeal that Alfred abandoned Alyssa for a period of one year. However, as this court has stated, "we do not believe making express findings is an appropriate task for a reviewing court. This view comports with the long-standing rule that the reviewing court is not the finder of fact." (*In re V.F., supra,* 157 Cal.App.4th at p. 973.)

We also decline to conclude that the trial court made the implied finding that Alfred abandoned Alyssa for the required one-year period under section 7822, subdivision (a)(3). We cannot imply a finding by the trial court that is inconsistent with

evidence, a claim that is not subject to forfeiture, addressing the issue appears warranted."

9

the *express* finding that the court made. (See *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719, 732 [appellate court presumes findings in favor of the prevailing party *in the absence of express findings*].) The court in its oral ruling expressly found abandonment for the six-month period specified in section 7822, subdivision (a)(2). Consequently, we will not imply a finding of abandonment for the one-year period specified in section 7822 subdivision (a)(3). Further, as this court stated in *V.F.*, "we decline to make implied findings where the trial court has not considered the appropriate statutory provision. [Citation.] Instead, we reverse . . . and remand the case to the trial court to consider and make proper findings under [the correct statute]. (*In re V.F., supra,* 157 Cal.App.4th at p. 966.)[8]

## II. *Sufficiency of the Evidence to Support the Court's Finding of Abandonment*

Alfred contends that even considering the case under the incorrect provision, there is not substantial evidence to support the court's finding that Alfred abandoned Alyssa. Specifically, Alfred contends that Diana did not meet her burden to prove that he did not communicate with Alyssa or that he intended to abandon her during the six-month time period. We review this claim of error because if, as Alfred contends, the evidence is insufficient to support a finding of abandonment for the inapplicable six-month period, it necessarily would be insufficient to support a finding of abandonment for the applicable one-year period.

---

[8] In light of our reversal of the order granting Diana's petition, Alfred's claim of ineffective assistance of counsel is moot.

We apply a substantial evidence standard of review to a trial court's findings under section 7822. (*In re Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1010 (*Allison C.*).) "Under the substantial evidence standard of review, ' "[a]ll conflicts in the evidence must be resolved in favor of the respondents and all legitimate and reasonable inferences must be indulged in to uphold the judgment [or order]" ' [Citation.] Abandonment and intent ' "are questions of fact for the trial [court] . . . . [The court's] decision, when supported by substantial evidence, is binding upon the reviewing court. An appellate court is not empowered to disturb a decree adjudging that a minor is an abandoned child if the evidence is legally sufficient to support the finding of fact as to the abandonment [citations]." ' [Citation.] 'The appellant has the burden of showing the finding or order is not supported by substantial evidence.' " (*Id.* at pp. 1010-1011.)

"A parent's 'failure to provide support[ ] or failure to communicate' with the child for a period of one year or more 'is presumptive evidence of the intent to abandon,' and '[i]f the parent [has] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent . . . .' (§ 7822, subd. (b).) The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period." (*In re Amy A.* (2005) 132 Cal.App.4th 63, 68.)

We conclude that there is substantial evidence to support the court's finding that Alfred left Alyssa with Diana with no provision for Alyssa's support for a period of six months with the intent to abandon her. As this court has noted, a parent "leaves" a child within the meaning of section 7822 by voluntarily surrendering the child to the care and

11

custody of another person. (*In re Amy A., supra,* 132 Cal.App.4th at p. 69.) It is undisputed that Alfred surrendered Alyssa to Diana's care and custody. As noted above, Alfred's own testimony at the hearing on Diana's petition supports a finding that he made his last child support payment in October 2011. Based on Diana's testimony and statements to the social worker, the court could reasonably find that Alfred made his last support payment to Diana in 2009 in the amount of $125.

Alfred cites *In re Cattalini* (1946) 72 Cal.App.2d 662, 667 for the proposition that inability to pay support rebuts the presumption of abandonment arising from failure to support, and contends that he was unable to pay support while he was incarcerated. However, Alfred did not testify that he was unable to earn money while he was incarcerated. In any event, there was substantial evidence that he was released from prison and made his last support payment in 2009, and was not incarcerated again until 2011. At trial, Alfred testified that he became employed in August 2013 after he was released from prison, but he had not paid any support since his release in June 2013. Thus, the trial court reasonably found that there were "six-month periods at a time since 2009 that [Alfred] had the opportunity to [but did not] provide financial support for [Alyssa]."

Alfred notes Diana's trial testimony that she "gave up" on collecting support from him, and cites *In re George G.* (1977) 68 Cal.App.3d 146, 159 (*George G.*) for the proposition that "failure to contribute to support in the absence of a demand for support does not prove an intent to abandon." However, in *George G.* the parents voluntarily placed the child in a foster home supported by public funds and there was no demand that

12

they pay child support. (*Id.* at pp. 150, 159, & fn. 11.) Alfred's situation is clearly distinguishable. He had been obligated to pay child support under a court order since the time he and Diana separated in 2004, and his court-ordered support obligation remained in force at the time of trial, notwithstanding Diana's having "given up" on collecting it. Accordingly, it is inaccurate to say that there was no demand for support in this case.

In any event, as the *Allison C.* court noted, " ' "[a]though a parent's failure to contribute to his child's support absent demand does not necessarily show abandonment, such failure coupled with failure to communicate, may do so." ' " (*Allison C., supra,* 164 Cal.App.4th at p. 1013.) Here, the trial court based its abandonment finding on Alfred's failure to support Alyssa coupled with his failure to communicate with her.

The court's finding that there were at time periods of "six months at the very least" during which Alfred had no contact or "token contact, at best" with Alyssa is supported by substantial evidence. Although Alfred sometimes called his father's home and spoke to Alyssa when she was there visiting, Alyssa visited her grandfather only twice a month and stopped visiting him in early 2012 because she did not want to speak to Alfred. Alyssa testified that her last telephone conversation with Alfred occurred in early 2012, and Alfred did not provide the social worker with any evidence that he had telephone communication with Alyssa after that time. Diana testified that Alfred never called Alyssa at Diana's home phone, and Alyssa testified that he rarely called her on her cell phone, which she had since she was eight years old. Alyssa further testified that she received some letters and one or two cards from Alfred at her grandfather's house, but that she received no letters from him after she stopped going there. She received five text

13

messages from Alfred in 2013, but never responded to them. She wrote two letters to Alfred in April 2012, but she and Diana both testified that she did so only because her grandfather asked her to, and she did not want to hurt her grandfather's feelings. Based on this evidence, the court could reasonably find that Alfred had made only token efforts to support and communicate with Alyssa for periods of at least six months.

In sum, there is substantial evidence to support the court's finding that Alfred left Alyssa in Diana's care and custody for a period of six months without any provision for her support or communication from him, with the intent to abandon her.

### III. *ICWA Notice*

Alfred contends that remand is necessary for compliance with the ICWA because Diana did not properly investigate Alyssa's native American heritage or provide adequate notice to the Pascua Yaqui Tribe after Alfred disclosed a possible connection to that tribe. We reject Alfred's contention.

The social worker reported that during her interview with Alfred, he "indicated there may be Indian heritage in his family background." The social worker notified Alfred's counsel of the possible Indian heritage and sent Alfred ICWA-020 and ICWA-030 forms to fill out on October 28, 2013.[9] At a hearing on November 8, 2013, which

---

9    Form ICWA-020 is entitled *Parental Notification of Indian Status*. (Cal. Rules of Court, rule 5.481(a)(2).) Form ICWA-030 is entitled *Notice of Child Custody Proceeding for Indian Child*. (Cal. Rules of Court, rule 5.481(a)(4)(A).) Form ICWA-030 is used to provide notice to, among others, tribes and the Bureau of Indian Affairs of a child custody proceeding under the ICWA and provide information on the child that can be used to determine whether the child has Indian heritage, including information concerning the child's grandparents, and great-grandparents.

14

Alfred did not attend, Alfred's counsel told the court that Alfred had not yet filled out the ICWA-030 form but said that he could do so immediately. The social worker reported that she had spoken to Alfred the day before the hearing, and that he had said he would bring the form to the November 8 hearing.

The court asked counsel to get the information from Alfred "over the phone and come back in so we can get the form." Counsel replied that Alfred did not have all of the information yet. The court then asked counsel to call Alfred and get whatever information he had. After a recess to allow Alfred's counsel time to get the information from Alfred over the phone, counsel reported that Alfred had told him, "I'll have the information for you by Monday." However, Alfred's counsel added that Diana had obtained information over the phone from Alfred's father that was "sufficient for notice." Diana's counsel told the court that they had the name of the tribe and "birth names of the grandmothers." The court ordered that notice be sent to the Pascua Yaqui Tribe.

Diana filed an ICWA-030 form in December 2013. Regarding the tribe in which Alyssa may be eligible for membership, Diana stated: "Pascua Yaqui Tribe as alleged by biological father. However, this was never told to the biological mother or in prior court proceedings until recently." The form provided Alfred's name and last known address, Alfred's father's name and address, and the names of Alfred's grandmothers. The Pascua Yaqui Tribe responded to the ICWA notice with a letter stating that Alyssa, Diana, and Alfred were not members of the tribe and did not have applications for membership pending. The letter added that "[b]ased on the family information provided and the current enrollment records, the child is not eligible for membership and the Tribe will not

15

intervene in this matter." Based on the tribe's letter, the court found that ICWA did not apply "to this particular petition, nor to this hearing."

Alfred faults Diana for failing to conduct an adequate inquiry into Alyssa's Indian heritage. He assumes that Diana did not fully question Alfred's father regarding his knowledge of paternal relatives. Alfred contends that Diana could have obtained more information that his father presumably knew or could readily have obtained, such as the names, birth dates, and birth places of Alyssa's paternal great-grandparents. He claims that Diana's inadequate inquiry resulted in deficient notice to the tribe.

We reject Alfred's claim of ICWA error because we conclude, under the reasoning of *In re Rebecca R.* (2006) 143 Cal.App.4th 1426 (*Rebecca R.*) and *In re N.E.* (2008) 160 Cal.App.4th 766 (*N.E.*), that Alfred has not shown that he was prejudiced by any deficiency in the notice to the tribe.

In *Rebecca R.*, the father claimed on appeal that the order terminating his parental rights should be reversed because there was no evidence to show that the respondent agency had inquired about his Indian ancestry. (*Rebecca R., supra,* 143 Cal.App.4th at p. 1428.) In addition to concluding that there was substantial evidence of adequate inquiry, the *Rebecca R.* court rejected the father's claim on the ground that he had failed to show prejudice. (*Id.* at p. 1430.) Regarding the father's complaint that he had not been asked below whether the child had any Indian heritage, the court concluded that "there can be no prejudice unless, *if* he had been asked, father *would have* indicated that the child did (or may) have such ancestry." (*Id.* at p. 1431.)

16

The *Rebecca R.* court elaborated: "Father is here, now, before this court. There is nothing whatever which prevented him, in his briefing or otherwise, from removing any doubt or speculation. He should have made an offer of proof or other affirmative representation that, had he been asked, he would have been able to proffer some Indian connection sufficient to invoke the ICWA. He did not. [¶] In the absence of such a representation, the matter amounts to nothing more than trifling with the courts. [Citation.] *The knowledge of any Indian connection is a matter wholly within the appealing parent's knowledge and disclosure is a matter entirely within the parent's present control.* The ICWA is not a 'get out of jail free' card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. . . . [¶] The burden on an appealing parent to make an affirmative representation of Indian heritage is de minimis. In the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal." (*Rebecca R., supra*, 143 Cal.App.4th at p. 1431, italics added.)

In *N.E.,* the father appealed an order terminating his parental rights and claimed that the order must be reversed because the respondent agency failed to inquire of him whether his daughter may have Indian heritage within the meaning of the ICWA. The mother told the agency that the father did not have any Indian ancestry and the father's counsel stipulated that the ICWA did not apply. (*N.E., supra,* 160 Cal.App.4th at p. 768.) The father did not claim on appeal that he had any Indian heritage. (*Id*. at p. 769.) Following the reasoning of *Rebecca R*., the *N.E.* court stated: "Here, as in *Rebecca R.*, [the father] has not suggested he in fact has any Indian heritage. [The] respondent's brief

17

discusses *Rebecca R.*, at length, but even in his reply brief, [the father] still declines to assert that he in fact has Indian ancestry. Under the circumstances, he has failed in his burden to demonstrate prejudice and we must affirm." (*N.E.* at p. 771.)

*Rebecca R.* and *N.E.* support the proposition that an appellant claiming inadequate ICWA inquiry must show prejudice on appeal by making an offer of proof or other affirmative representation that if the requisite ICWA inquiry had been made, appellant "would have been able to proffer some Indian connection sufficient to invoke the ICWA." (*Rebecca R., supra,* 143 Cal.App.4th at p. 1431; *N.E., supra,* 160 Cal.App.4th at p. 770.) Like the fathers in *Rebecca R.* and *N.E.*, Alfred has failed to show any prejudice resulting from the claimed inadequacy of the ICWA inquiry and notice in this case. His claim of ICWA error is even weaker than those in *Rebecca R.* and *N.E.* because he was given a greater opportunity to show Indian ancestry than were the fathers in either of those cases by being provided an ICWA-030 form to fill out before trial. He had ample time to obtain relevant information from his family members and submit the form before ICWA notice was sent to the tribe. He represented to the social worker that he would submit the form to the court, but he never did. He cannot now be heard to complain that Diana or the court failed to conduct an adequate inquiry into Alyssa's Indian heritage that he alleges is *through him*, absent some representation on appeal that such inquiry would have revealed sufficient Indian heritage to invoke the ICWA.

DISPOSITION

The January 24, 2014, order granting Diana's petition to declare Alyssa free from the custody and control of Alfred is reversed. The case is remanded to the superior court with directions to hold a hearing to determine whether Alyssa should be freed from Alfred's custody and control under section 7822, subdivision (a)(3), and to identify Diana as the petitioner in the order it enters after that hearing. The court may rely on the evidence and argument presented at the January 24, 2014, trial and any additional evidence that may be relevant to its determination.


AARON, J.

WE CONCUR:


HUFFMAN, Acting P.J.


NARES, J.

19